## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

IN RE

ROBERTA M. DICKSON                                        CASE NO. 17-51159

DEBTOR

## MEMORANDUM OPINION AND ORDER
## PARTIALLY GRANTING MOTION FOR SANCTIONS

Having achieved a dismissal of her mother's chapter 11 proceeding pursuant to

§1112(b)(1),[1] creditor/daughter now seeks reimbursement of her chapter 11 legal fees from her

mother, pursuant to Bankruptcy Rule 9011(b)(1) or this Court's inherent authority, as a sanction

for her mother's bad faith bankruptcy filing.   Specifically, this matter is before the Court on the

Motion for Sanctions [ECF No. 130 (the "Motion")] filed by creditors Mary Louise Dickson

Shook and her affiliated entity, Dickson Oaks, LLC (together, "Creditors").   Former debtor

Roberta Moberly Dickson ("Debtor") filed a Response [ECF No. 134] to the Motion.   Following

Creditors' Reply [ECF No. 135], the Court held a hearing on October 25, 2017, at which the

parties agreed that no further evidence was necessary and the matter could be submitted on the

record.   The following constitutes the Court's findings of fact and conclusions of law.

## BACKGROUND

**A.      Pre-Bankruptcy History.**

Debtor is Ms. Shook's 81-year-old mother.   In 2011, Creditors filed a lawsuit against

Debtor and her son, William Dickson, in Jefferson County, Kentucky Circuit Court (the "State

Court") styled *Mary Louise Dickson Shook, et al. v. Roberta M. Dickson, et al.*, No. 11-CI-06921

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.
References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___."

(the "State Court Litigation").   A trial in August 2016 resulted in a jury verdict against Debtor

and her son awarding Creditors $3,270,000.   The State Court judgment, entered on November

29, 2016 (the "Judgment"), breaks down the award as follows:

- o  Debtor and her son, William Dickson, breached and aided/abetted one another in
     the breach of fiduciary duties owed to Creditors.   The Judgment awarded
     Creditors $165,000 in damages for that breach, for which Debtor and William
     Dickson are jointly liable.

- o  For Debtor's wrongful interference with a devise or inheritance, the Judgment
     awarded Creditors $2,650,000, for which Debtor is solely liable.

- o  For Debtor's intentional infliction of emotional distress upon Creditors, the
     Judgment awarded Creditors $50,000, for which Debtor is solely liable.

- o  The Judgment awarded punitive damages of $405,000 solely against Debtor.

On December 29, 2016, Debtor appealed the Judgment to the Kentucky Court of

Appeals.   Debtor tried but failed to obtain a supersedeas bond in connection with the appeal.

On May 26, 2017, the State Court entered an order denying all post-Judgment motions in the

State Court Litigation.

**B.      Debtor's Chapter 11 Filing, the Dismissal Hearing, and the Dismissal Ruling.**

Debtor filed a voluntary chapter 11 petition a week later on June 2, 2017.   Ten days

before this filing, Debtor obtained a "Certificate of Counseling" [ECF No. 1 at 8] required for

any individual bankruptcy filing.   11 U.S.C. § 109(h).   She was represented in the bankruptcy

by John T. Hamilton, Esq. who, along with Debtor, signed the petition.   Hamilton is a member

of Gess, Mattingly & Atchison PSC.   The firm also represented Debtor in the State Court

Litigation.

Debtor filed her schedules of assets and liabilities with her petition.   Within the next few

weeks, Debtor filed applications to employ Hamilton as her bankruptcy counsel and his partner,

William Allen, Esq., as special counsel to pursue her appeal in the State Court Litigation, and

entered into an Agreed Order modifying the automatic stay to allow the appeal to proceed.

On July 12, 2017, Creditors objected to Debtor's claimed exemptions and filed a Motion

to Dismiss or Abstain seeking dismissal of the bankruptcy predicated on Debtor's lack of good

faith: "This bankruptcy case was filed by a solvent debtor in what is essentially a two-party

dispute, for the purpose of avoiding the supersedeas bond required to stay collection during the

pendency of an appeal. As such, the case should be dismissed as a bad faith filing." [ECF No.

23 at 3.] The Court scheduled an evidentiary hearing on that motion (the "Dismissal Hearing")

for August 29, 2017.

In the interim, nearly two months after the chapter 11 filing, on August 1, 2017, Debtor

filed a motion in the State Court pursuant to Kentucky Civil Rule 73.04(2) (the "CR 73.04

Motion") for an order authorizing Debtor to post a supersedeas bond in the amount of $3.5

million secured by all of Debtor's non-exempt assets. Creditors opposed the Motion. The

State Court heard the CR 73.04 Motion on August 22, 2017, and no ruling had been issued at the

time of the Dismissal Hearing. Debtor's counsel stated at the Dismissal Hearing that if the State

Court granted the CR 73.04 Motion, Debtor would seek to dismiss the bankruptcy case. The

day after the Dismissal Hearing, the State Court denied the CR 73.04 Motion.

The day after the Dismissal Hearing, this Court, applying the factors set forth in *Laguna*

*Assocs. Ltd. P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d

734, 738 (6th Cir. 1994), dismissed the bankruptcy case for cause under § 1112(b), finding that

Debtor lacked good faith in filing the bankruptcy. The Court found and ruled as follows:

> In her bankruptcy schedules, in addition to her home, household goods, and a
> vehicle, Debtor listed primarily financial assets, including bank accounts, IRAs

3

and whole life insurance valued in Part 4 of her schedules in excess of $4.5 million, of which she claimed in excess of $2.1 million is exempt.   She valued all her assets in excess of $5 million.   For liabilities, Debtor listed no secured creditors, tax claims of $9,690, three credit cards, each having a balance of $200.00, and liability on the Judgment in the amount of $3,200,000.   By the time of the Dismissal Hearing, Debtor had paid her scheduled tax liabilities and credit card debt, such that her only remaining creditors were the litigation parties, including her son who filed a proof of claim for $170,309.72 based on the Judgment.

Debtor is unemployed—she receives income from Social Security and her financial assets in excess of $8,500 when allocated on a monthly basis.   She does not own or operate a business, and she has no employees.

At the Dismissal Hearing, the parties disputed whether Debtor was solvent at the petition date.   Debtor presented proof and argument that (i) if she was forced to liquidate her assets to satisfy the judgment, she would incur a significant tax liability; (ii) she believed her appeal will be successful and if Creditors executed on the Judgment, she will lose her assets and be unable to recover them.   Debtor had not formulated a chapter 11 plan or other strategy for emerging from chapter 11.   Her stated purpose for being in chapter 11 was to preserve her assets and protect them from liquidation.

The majority of these [*Laguna*] factors weigh in favor of a finding that Debtor filed her bankruptcy in bad faith.

o   Factor 1 [the debtor has one asset] weighs against a bad faith finding because Debtor has multiple assets.

o   The following facts weigh in favor of a finding of bad faith.

   •   First, the State Court found Debtor's prepetition conduct was improper. The Judgment is based on Debtor's conduct which resulted in a damages award, including a significant amount of punitive damages.   The jury found and the Judgment stated Debtor breached her fiduciary duty to Creditors, wrongfully interfered with a devise or inheritance, and intentionally inflicted emotional distress.

   •   This is essentially a two-party case.   Debtor's only remaining creditors are the litigation parties.   All of their claims arise out of the Judgment.   Thus, there is no pressure from any non-moving creditor that resulted in the filing.

4

- Although Debtor was not subject to a prepetition foreclosure action, she was subject to prepetition litigation. This case was filed when the Judgment became final and collection action by Debtor's only substantial creditors could ensue. Debtor and her Creditors have proceeded to a standstill in the State Court Litigation. Judgment was entered against Debtor, and Debtor asserts that she is required to post a bond that she cannot afford.

- Debtor has no business to reorganize. She opposes liquidation. There is no bankruptcy purpose for a continuation of this case—its sole purpose is to substitute this proceeding for the posting of a supersedeas bond.

The Court dismissed the case based on the totality of the circumstances. Based on this record, Creditors contend Debtor should be sanctioned.

The day before the Dismissal Hearing, Creditors filed a Motion for Additional Time to Evaluate Request for Sanctions and to Shorten Notice of Hearing. The Court denied the request to shorten notice. Creditors ultimately filed the Motion on September 18, 2017, more than three months after Debtor filed her petition.

## ANALYSIS

**A.    Jurisdiction.**

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District. 28 U.S.C. § 1409.

**B.    Bankruptcy Rule 9011 and the Court's Inherent Authority.**

Relying on the Court's findings in support of its decision to dismiss Debtor's bankruptcy case, Creditors argue that "Debtor's [bankruptcy] filing had no real bankruptcy purpose, but rather was filed solely for the improper purpose of harassing [Creditors] and unnecessarily delaying [their] execution upon [the] state court judgment against Debtor." [ECF No. 130 at 4.] Thus, Creditors contend that Debtor's bankruptcy filing violated Bankruptcy Rule 9011(b)(1),

and that Debtor is subject to sanctions under Bankruptcy Rule 9011(c) and the Court's inherent

authority to impose sanctions.

Bankruptcy Rule 9011 provides, in pertinent part:

(b)    Representations to the court.   By presenting to the court (whether by
signing, filing, submitting, or later advocating) a petition, pleading, written
motion, or other paper, an attorney or unrepresented party is certifying that to the
best of the person's knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances[,]—

(1)    it is not being presented for any improper purpose, such as to harass or to
cause unnecessary delay or needless increase in the cost of litigation;

FED. R. BANKR. P. 9011(b)(1).   In addition, subject to certain conditions and after notice and a

reasonable opportunity to respond, if "the court determines that subdivision (b) has been

violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or

parties that have violated subdivision (b) or are responsible for the violation."   FED. R. BANKR.

P. 9011(c).

Bankruptcy Rule 9011 generally provides a safe harbor period to allow a party to correct

challenged behavior, but the safe harbor does not apply when "the conduct alleged is the filing of

a petition in violation of subdivision (b)."   FED. R. BANKR. P. 9011(c)(1)(A).   "This is because

the filing of a petition has immediate serious consequences, among which is the imposition of the

automatic stay of section 362 to the Code."   10 COLLIER ON BANKRUPTCY ¶ 9011.05[1][b] (Alan

N. Resnick & Henry J. Sommer eds., 16th ed. 2017) (citation omitted).   Here, the safe harbor

does not apply because Creditors claim that the filing of Debtor's petition itself is the violation.

In addition to seeking relief under Bankruptcy Rule 9011, Creditors also argue that the

Court should enter sanctions against Debtor based upon the Court's inherent authority.   "The

Bankruptcy Court has certain inherent authority to impose sanctions, but it is to be used

6

sparingly and only when and where justified." *In re Endrex Invest., Inc.*, 84 B.R. 207, 211

(Bankr. D. Colo. 1998); *see also In re Zinni*, 261 B.R. 196, 202 (B.A.P. 6th Cir. 2001)

(recognizing bankruptcy court's inherent authority to impose sanctions).   "Because of their very

potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. Nasco*,

501 U.S. 32, 44, 111 S. Ct. 2123 (1991) (citation omitted).   In this case, because Bankruptcy

Rule 9011 provides sufficient authority for the Court to consider levying sanctions based upon

the filing of Debtor's petition, the Court, in its discretion, declines to exercise its inherent

authority as a means to impose sanctions.

### C.    Creditors have the burden of proof to establish that Debtor filed her petition for an improper purpose.

The parties agree that the dismissal of Debtor's chapter 11 proceeding pursuant to

§ 1112(b) does not automatically result in the imposition of sanctions.  *See also*, *e.g.*, *In re*

*Collins*, 250 B.R. 645, 656 (Bankr. N.D. Ill. 2000) ("A dismissal for bad faith filing does not *per*

*se* require a subsequent imposition of sanctions.") (citation omitted).   Rather, Bankruptcy Rule

9011(b)(1) is violated if a pleading is filed for an "improper purpose."   "[I]t is [Creditors']

position that in this particular case the Debtor's bad faith supports a finding that the petition was

filed for an 'improper purpose'…."   [ECF No. 135 at 1.]

As the movants, Creditors carry the burden of proof on the Motion.  *In re McLean Wine*

*Co.*, 463 B.R. 838, 857 (Bankr. E.D. Mich. 2011).   In applying this burden, this Court must

resolve all doubts in Debtor's favor as the party against whom sanctions are sought.  *Id.*

"The focus of a claim under the 'improper purpose' clause is on why the nonmovant

filed the legal pleading at issue."  *In re Dental Profile, Inc.*, 446 B.R. 885, 900 (Bankr. N.D. Ill.

2011) (citing *Collins*, 250 B.R. at 661).   The remainder of subsection (b)(1) offers examples of

such purposes.   Where a bankruptcy petition filing is the challenged conduct, however, courts have explained that the "improper purpose" is the absence of a genuine intent to reorganize (*see*, *e.g.*, *In re Hesed Enters., LLC*, No. 16-10299-rlj7, 2017 Bankr. LEXIS 3322, at \*25 (Bankr. N.D. Tex. Sept. 29, 2017)) or effectuate an orderly liquidation.   *See*, *e.g.*, *In re Siegel*, 340 B.R. 638, 641 (Bankr. S.D. Fla. 2006); *see also In re BCC Sandusky Permanent LLC*, No. 17-30905, 2017 Bankr. LEXIS 1516, at \*37 (Bankr. N.D. Ohio June 7, 2017) (commencing a chapter 11 case to preserve a going concern or maximize the value of the debtor's estate serves a valid bankruptcy purpose); *U.S. Tr. v. Stone Fox Capital LLC (In re Stone Fox Capital LLC)*, 572 B.R. 582, 590 (Bankr. W.D. Pa. 2017) (same); *In re Enmon*, No. 12-10268, 2013 Bankr. LEXIS 504, at \*11-14 (Bankr. E.D. Tex. Feb. 7, 2013) (stating that a proper bankruptcy purpose includes facilitating "the financial rehabilitation or liquidation of a debtor" but does not include "invoking the automatic stay for the sole purpose of achieving a litigation objective").

Creditors argue that Debtor did not have a legitimate bankruptcy purpose in filing her petition and instead used the bankruptcy process to effect a non-bankruptcy purpose.   To further their argument, Creditors rely primarily on a chapter 13 case in which the court found that the debtor "manipulated the bankruptcy process" to delay a state court family law contempt matter. *In re Lockhart*, No. 16-32803(1)(13), 2017 Bankr. LEXIS 143 (Bankr. W.D. Ky. Jan. 17, 2017). Unlike this case, in *Lockhart*, no appeal was taken from the state court judgment; rather, the debtor's counsel admitted that the bankruptcy was filed to delay the contempt matter pending the appointment of a new family court judge.   The bankruptcy court found that "Debtor's chapter 13 filing could not benefit the Debtor in any respects, other than providing him time to pursue

additional litigation in [s]tate [c]ourt.   Clearly, this is an impermissible purpose and frivolous."
*Id*. at *10.

Many other courts have held that filing a bankruptcy petition to obtain a civil remedy is
not a valid bankruptcy purpose and, thus, is an improper purpose.   *See, e.g.*, *In re Rothchild's
Jewelers, Inc.*, 337 B.R. 561, 565 (Bankr. E.D. Va. 2004).   In *Rothchild's*, the party who filed
the petition for the corporate debtor, Harris, was not the debtor's owner, though he had a pledge
of the owner's stock.   Harris and the debtor's owner, Hutchins, were in a contract dispute
relating to the debtor's retail business.   Harris "took matters into his own hands by causing the
stock to be signed over to him, whereupon he caused the debtor to file bankruptcy without the
consent of Hutchins" and in violation of another court's order "to return the store premises to
Hutchins."   *Id*.   The bankruptcy court concluded that Harris filed "a bankruptcy petition to
effect a civil remedy in his dispute with debtor and Hutchins [which] was a blatantly improper
use of the Bankruptcy Code."   *Id*.   The court dismissed the petition as a bad faith filing, and
found that Harris' conduct constituted "a basis for the court to sanction him for the damages that
resulted from the filing."   *Id.; see also In re Bouley*, No. 11-1682, 2011 Bankr. LEXIS 3629, at
*7 (Bankr. D. Haw. Sept. 23, 2011) ("A bankruptcy that is filed for the sole purpose of invoking
the automatic stay, without any reasonable expectation of a confirmed chapter 13 plan or other
resolution consistent with the purposes of the Bankruptcy Code, is filed for an improper
purpose.").

**D.    Creditors have established that Debtor filed the petition for an improper purpose.**

Creditors argue that the Court's finding that Debtor's case satisfied a majority of the
Sixth Circuit's *Laguna* factors "objectively illustrate[s] the Debtor's lack of good faith when she

filed the Petition and that it was filed for an improper purpose," namely, as a "litigation tactic to

harass and cause unnecessary delay and expense to [Creditors]."    [ECF No. 135 at 2.]    In light

of the evidence in the record, the Court finds that this case was filed solely for the improper

purpose of invoking the automatic stay to delay Creditors' execution on the State Court

Judgment.

Debtor's bankruptcy was crafted and prepared after the jury verdict and prior to the

denial of the post-Judgment motions by the law firm representing Debtor in the State Court

Litigation.    The bankruptcy strategy was executed early enough to allow the schedules and

statement of financial affairs to be prepared and filed with Debtor's petition.    Indeed, Debtor's

Statement of Financial Affairs indicates that bankruptcy was explored at least as early as

November 2016, and that those bankruptcy consults continued until the petition's filing in June

2017. [ECF No. 1 at 41, question 16.]    Although Counsel claimed that Debtor needed a brief

breathing spell to exhaust her state court remedies, her final request for relief in the State Court,[2]

the CR 73.04 Motion, was not filed until nearly two months after she filed her petition.

The record clearly shows there was no legitimate bankruptcy purpose in filing the

petition.    Debtor opposed liquidation, orderly or otherwise.    And, while an individual not

engaged in business is eligible to reorganize under chapter 11 (*Toibb v. Radloff*, 501 U.S. 157,

161, 111 S. Ct. 2197 (1991)), Debtor had no business to reorganize and never offered evidence

of any intent to devote future social security payments or retirement account income to pay

---

[2] Debtor reiterated this position in her Response to the Motion:    "Ms. Dickson filed her petition, in part, because she could not immediately obtain a supersedeas bond, and she sought the protection of the automatic stay to make further attempts to do so.    Likewise, the bankruptcy court provided protection in the event her appeal is successful, and the underlying judgment is reversed, by preserving her assets and maintaining the status quo."    [ECF No. 134 at 8.]

Creditors through a plan.   *See*, *e.g.*, *In re Johnson*, 546 B.R. 83, 129-130 (Bankr. S.D. Ohio

2016) ("The commencement of a Chapter 11 case should serve as 'an invitation to a negotiation,'

the goal being a reorganization under which creditors are repaid using the debtor's going-

concern value—or, in the case of an individual Chapter 11 debtor, his future income—rather than

assets that typically have significantly less value in liquidation.").[3]

All of Debtor's efforts were predicated on her belief that the Judgment would be reversed

on appeal.   She wanted to take advantage of the automatic stay under the Bankruptcy Code to

avoid collection on her assets pending that appeal.   Indeed, rather than proffer a legitimate

bankruptcy purpose at the Dismissal Hearing, Debtor's counsel was direct and forthright in his

statement that if Debtor obtained a favorable result on the CR 73.04 Motion from the State

Court, he would seek dismissal of Debtor's bankruptcy case.   This chapter 11 case was filed

solely to effect a civil remedy.   The petition's filing violated Bankruptcy Rule 9011.

The Court pauses to be clear on this conclusion.   There is a difference between a weak

position and one that is objectively improper.   The ruling in this case does not compel counsel to

predict a court's ruling on a bad faith challenge under the Sixth Circuit's totality of

circumstances test in *Laguna* and its progeny.   What is required to avoid a Bankruptcy Rule

9011 violation, however, is that there be a legitimate bankruptcy purpose in filing a petition.

Here, there is no proof that Debtor intended any bankruptcy goal other than the imposition of the

---

[3] Debtor's Response to the Motion states that "while Ms. Dickson never had the opportunity to propose a plan, she was in the process of developing a liquidating plan in the event she was unsuccessful on appeal.   If that transpired, the bankruptcy proceeding would have provided a process for an orderly liquidation of the estate assets under the supervision of this Court."   [ECF No. 134 at 8-9 (emphasis added).]   Thus, the Response confirms that Debtor did not intend to submit a plan unless her State Court appeal failed, and she filed bankruptcy to delay execution on the Judgment pending her appeal.   Debtor did not offer testimony at the Dismissal Hearing of any intent to put forward a plan, nor did she ever tender any other evidence to support the statement in her Response that she intended to propose a plan.   Counsel's arguments in a legal brief are not evidence.   *Sicherman v. Cohara (In re Cohara)*, 324 B.R. 24, 28 (B.A.P. 6th Cir. 2005).

automatic stay.   Thus, Debtor misses the point with her contention that a split of authority exists

about whether the inability to post a bond, as opposed to a refusal to do so, permits a bankruptcy

filing.   [ECF No. 134 at 10-11.]   A split of authority concerning only one of the *Laguna* factors

to evaluate bad faith under § 1112 is not pertinent to the issue presented on this Motion.   The

overarching question to be evaluated using the *Laguna* test—in which no one factor is

dispositive—is whether the debtor filed for bankruptcy relief in good faith.   That is not the same

question as whether a debtor filed a petition for an improper purpose—which, in connection with

a chapter 11 filing, concerns whether the debtor had a genuine intent to reorganize or liquidate.

> As a number of courts have recognized, the standards for dismissing a case
> pursuant to the good faith requirement implied in 11 U.S.C. § 1112(b) are
> different than the improper purpose standard for imposing sanctions under
> Bankruptcy Rule 9011.   *See, e.g.*, *In re Endrex Investments, Inc.*, 111 [B.R.] 939,
> 944 (D. Colo. 1990); *In re HBA East, Inc.*, 101 [B.R.] 411, 418 (Bankr. E.D. N.Y.
> 1989); *In re Southern California Sound Systems, Inc.*, 69 [B.R.] 893, 901 (Bankr.
> S.D. Cal. 1987).   *Cf. In re Cedar Falls Hotel Properties Ltd. Partnership*, 102
> [B.R.] 1009 (Bankr. N.D. [Iowa] 1989).   As the court in *California Sound
> Systems* observed, "the appellation 'bad faith filing' is perhaps a misnomer in that
> it implies the existence of ill will or malicious conduct on the part of debtor prior
> to filing for relief."   69 [B.R.] at 901 n.2.   In the Northern District of Illinois the
> determination of whether a bankruptcy petition is filed in good faith is made by an
> analysis of objective standards geared toward evaluating "whether reorganization
> is the proper course of action in a particular debtor's case."   *In re Mandalay
> Shores Cooperative Housing Assoc., Inc.*, 63 [B.R.] 842, 848 (N.D. Ill. 1986).   A
> dismissal under this criterion is by no means synonymous with a finding that a
> case was filed with intent to harass a creditor. Therefore, a dismissal of a case on
> the grounds that it was filed in bad faith does not in itself compel imposition of
> sanctions under Bankruptcy Rule 9011.

*In re Park Place Assocs.*, 118 B.R. 613, 618 (Bankr. N.D. Ill. 1990); *see also In re Oakgrove

Village, Ltd.*, 90 B.R. 246, 251 (Bankr. W.D. Tex. 1988) ("[O]ne of the purposes of

bankruptcy—and particularly of Chapter 11—is to provide a 'breathing space' for troubled

entities so that negotiations can begin with creditors. … To impose sanctions for *mere* 'bad faith'

filing, without more, would be improper." (citation omitted) (emphasis in original)).   Here,

12

Debtor had no intent to reorganize or liquidate when filing her petition, and therefore she

violated Bankruptcy Rule 9011.

Finally, to the extent Creditors argue that "Debtor's behavior during the pendency of her

bankruptcy case also supports [Creditors'] position that the Petition was filed for an improper

purpose and violated Rule 9011(b)(1)," actions taken post-petition by Debtor may not be

sanctioned under Bankruptcy Rule 9011 absent compliance with the safe harbor provision of that

rule.   [ECF No. 135 at 3-8.]   "The plain language of [Bankruptcy] Rule 9011(c)(1)(A) limits

the exception to the safe harbor provision to the act of filing a petition.   Accordingly, an

attorney cannot be sanctioned for 'later advocating' a position taken in the petition unless the

moving party complies with the safe harbor provision."   *In re Blasingame*, 559 B.R. 676, 685

(B.A.P. 6th Cir. 2016).   The record reflects no such compliance.

**E.      Sanctions.**

"The purpose of Rule 9011 is to impose sanctions in order to deter baseless filings and

thus avoid the expenditure of unnecessary resources."   *Heavring v. Schilling (In re Triple S*

*Restaurants, Inc.)*, 342 B.R. 508, 513 (Bankr. W.D. Ky. 2006).   Bankruptcy courts have

discretion with respect to the imposition of sanctions.   *B-Line, LLC v. Wingerter (In re*

*Wingerter)*, 594 F.3d 931, 936 (6th Cir. 2010).   While Bankruptcy Rule 9011(b) provides that,

by presenting a petition to the court, "an attorney *or unrepresented party*" is making a

certification in connection with the filing of that petition, courts recognize that represented

parties that sign a petition, like Debtor, also are making the same certification.   *See*, *e.g.*, *Dental*

*Profile, supra*, 446 B.R. at 904 ("All signatories to a voluntary petition, including bankruptcy

13

counsel and a corporate debtor's president, subject themselves to Bankruptcy Rule 9011."

(citations omitted)).

Sanctions "shall be limited to what is sufficient to deter repetition of such conduct or

comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2). Sanctions

may include "directives of a nonmonetary nature, an order to pay a penalty into court, or, if

imposed on motion and warranted for effective deterrence, an order directing payment to the

movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct

result of the violation."[4]  *Id.*   If warranted, reasonable fees and expenses can include those

"incurred in presenting or opposing the motion [for sanctions]."   FED. R. BANKR. P.

9011(c)(1)(A).   Law firms typically are held jointly responsible for violations committed by

their attorneys and employees.   *Id.*

In the Motion, Creditors requested the following relief:

> an Order: (i) granting [Creditors] sanctions against the Debtor pursuant to Fed. R.
> Bankr. P. 9011 and/or this Court's inherent authority in the amount of $44,279.18
> [for the costs, attorneys' fees, and expenses Creditors incurred through the
> dismissal of the case], plus the costs, attorneys' fees, expenses [Creditors] will
> incur in filing this motion, but in an amount not to exceed $1,000.00, and any
> other relief to which this Court deems just and proper, [and] (ii) requiring the
> Debtor to pay the total amount of the sanctions awarded and file an affidavit of
> compliance within ten (10) days from the entry of the Court's order,

[ECF No. 130 at 6.]   In her Response to the Motion, Debtor noted that Creditors did not request

sanctions against Debtor's counsel.   [ECF No. 134 at 1, 6.]   Then, in the Reply, after again

requesting relief against Debtor, Creditors offered a half-hearted suggestion that "if the Court is

so inclined, there appears to be a pattern of conduct by Debtor's Counsel that could warrant the

---

[4] Monetary sanctions are further limited when imposed on the court's own initiative.   FED. R. BANKR. P.
9011(c)(2)(B).

imposition of sanctions against him and/or his law firm." [ECF No. 135 at 9.] Yet, at the

hearing on this Motion, Creditors' counsel emphasized that Creditors did not have to seek

sanctions from Debtor's counsel to obtain monetary sanctions against Debtor herself—a

statement that fails to acknowledge that the main point of Bankruptcy Rule 9011 is deterrence.

     Despite Creditors' focus on seeking relief against Debtor via the Motion, the record is not

well-developed with respect to the extent of Debtor's personal responsibility for filing a petition

without a legitimate bankruptcy purpose.  At the Dismissal Hearing, Debtor testified to the

extent upon which she relied on professionals in her business affairs, including matters relating

to her petition.  Her testimony also manifested her belief that pursuing bankruptcy relief was

appropriate for her under the circumstances.  Courts will take a party's reliance on their

counsel's advice into consideration in levying monetary sanctions under Bankruptcy Rule 9011.

*See*, *e.g.*, *In re R and D Group, Inc.*, 136 B.R. 163, 166-67 (Bankr. S.D. Ohio 1992) (discussing a

motion for sanctions arising from the filing of a chapter 11 petition, noting that the client "seems

sincere in his belief that Chapter 11 could be used for such purposes [to stop a foreclosure sale

on a residence], which leads the Court to believe that his counsel is responsible for such belief,"

and refusing to award sanctions against debtor or its principals "who apparently relied upon

[counsel] for their interpretation of the purposes of Chapter 11 and the legitimacy of the instant

filing.").

     Because Debtor's testimony at the Dismissal Hearing reflected her strong reliance on

professionals in her business affairs, the Court questioned Creditors' counsel during the hearing

on this Motion regarding the propriety of assessing sanctions against the elderly Debtor based on

an improper litigation strategy that her counsel clearly crafted.  In response, Creditors' counsel

15

argued that even non-lawyers know that a bankruptcy stops collection activity and that the

Debtor advocated the litigation strategy by signing the petition.    Counsel's characterization of

what debtors understand—that a bankruptcy filing will stay collection activity—is a far stretch

from proving that Debtor had an improper motive in filing her petition in apparent reliance on

her counsel's advice.

On the other hand, Debtor indisputably signed a chapter 11 bankruptcy petition that

lacked a legitimate bankruptcy purpose, and Creditors incurred significant expense based on its

filing.    Even if Debtor relied strongly on her attorney's advice in connection with filing the

petition, "[l]itigants are 'held accountable for the acts and omissions of their chosen counsel.'"

*Couch v. Panther Petro., LLC (In re Couch)*, No. 17-5194, 2017 U.S. App. LEXIS 22251, at \*15

(6th Cir. Nov. 6, 2017) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S.

380, 396-97 (1993); *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006)).

Absolving Debtor of any responsibility for the filing of her petition in this circumstance would

not further the intent behind Bankruptcy Rule 9011.

Regarding sanctions against counsel, it is significant that Creditors chose to request

sanctions against Debtor alone in the Motion.    Normally, counsel are the parties against whom

monetary sanctions are sought for violations of Bankruptcy Rule 9011.    *Hesed Enters.*, 2017

Bankr. LEXIS 3322, at \*26 ("Monetary sanctions are generally directed at counsel; however, the

Rule may reach those clients 'personally aware of or responsible for any procedure instituted in

bad faith.'" (citation omitted)).    Because the primary purpose of Bankruptcy Rule 9011 is

deterrence (*see*, *e.g.*, *Triple S Restaurants*, 342 B.R. at 513), sanctions generally are more

properly levied against the law firm that crafted the improper bankruptcy filing.    Yet, Creditors

16

vehemently seek sanctions against Debtor and failed to request sanctions against her law firm, underscoring the emotional nature of this family conflict.   Notably, Creditors also did not object to Debtor's counsel's fee application in this case, further reflecting Creditors' motivation to pursue Debtor and not to seek relief against Debtor's bankruptcy counsel based on the work performed.   As such, the Court only will levy sanctions against Debtor sufficient to deter further improper bankruptcy filings by her—a circumstance that the Court views as remote.

The Court does have grave concerns about Debtor's counsel's filing of this petition without a legitimate bankruptcy purpose.   But, in its discretion, the Court will not issue sanctions against Debtor's counsel *sua sponte* on this record.   The Court will let this Memorandum Opinion provide clarity and deterrence to the bar with regard to an attorney's responsibility to ensure that bankruptcy petitions are filed for a legitimate bankruptcy purpose.

<u>**CONCLUSION**</u>

For the reasons stated herein, IT IS HEREBY ORDERED that within ten days of the date hereof, Debtor shall:   (i) pay Creditors $5,000.00 for her violation of Bankruptcy Rule 9011; and (ii) file a certificate of compliance with this Order.   This is a final order.

17

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Wednesday, November 22, 2017**
**(tnw)**